IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### WESTERN DISTRICT—PITTSBURGH 1876.

### Sinnott *versus* Mullin.

1. Plaintiff contracted to build four houses for defendant, and failed to complete the same by reason of the falling of a stone wall on another part of defendant's lot, whereby the buildings, which were nearly finished, were destroyed. In an action to recover for work done and materials furnished, *Held*, that it was the duty of defendant to provide a place for the erection of the houses that was reasonably safe, and that the contract itself implied an undertaking on his part that the place chosen was free from danger unless the plaintiff had assumed the risk of danger from the condition of the property.

2. The fact that the wall, after its destruction, was found to have been defective, would not subject the defendant to liability, if no reasonable means of knowledge were in his reach, but he was bound to exercise ordinary care in the management of the property on which he invited the plaintiff to enter, and if the wall was insufficient it was for the jury to say whether the defect was one against which it would have been the duty of a man of ordinary caution to provide.

3. If the loss was occasioned by an accident that could have been prevented by reasonable care, skill and expense it should be borne by defendant.

4. The responsibility and duty were on the defendant to know and see that the wall was reasonably sufficient for the purpose for which it had been built and maintained.

5. Testimony was offered by plaintiff tending to prove the insufficiency of the wall and to exhibit its character and the particulars wherein it was defective, which the court below rejected. *Held*, that this testimony should have been submitted to the jury.

6. It was not competent in this case for an engineer, who was examined as an expert, to swear to his belief as to the original purpose in view in building the wall, which had been standing between twenty and thirty years.

October 2d 1876. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward JJ. Williams, J., absent.

[Sinnott *v.* Mullin.]

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: No. 235, October and November Term 1875.

This was an action of assumpsit, brought by Pierce Sinnott against John Mullin, the plaintiff in his affidavit of claim, alleging that the defendant was indebted to him in the sum of $1953.75 and interest from August 1st 1872, the balance due for work done and materials furnished in and about the construction of certain buildings, tearing down houses, hauling away rubbish, excavation, &c., as charged in a statement annexed.

In his affidavit of defence, the defendant averred that the only dealings which he had with plaintiff were under a certain agreement in writing, under seal, dated April 17th 1872, wherein Sinnott, a carpenter and builder, contracted to erect and complete, with good materials, four houses, on a lot of Mullin, for which the latter was to pay Sinnott the sum of $3500 : $700 when the stone work was done, $1100 when the buildings were under roof, $600 when the buildings were ready for plastering, and $1100 when they were completed. The $700 to be paid when the stone work was finished, defendant alleged he had paid, and then further averred that the plaintiff covenanted to have the buildings finished by August 1872, but that in the latter part of July he did not have them under roof, and that he has not since completed them, and still refuses to complete them in pursuance of the stipulations of the agreement.

By the permission of the court, the plaintiff filed an amended *narr.*, which set forth the agreement under seal, as disclosed above in the defendant's affidavit, and continued :—

"And the said plaintiff further avers that, on the premises aforesaid, belonging to said defendant, and immediately adjoining or near to the same, to wit, within five feet of the place where said dwellings were to be placed and erected under the contract aforesaid, there was a stone wall, previously constructed by said defendant, which said wall was about forty feet long, twenty-four feet high and about two to four feet thick. And said plaintiff further avers that he entered upon the premises aforesaid and commenced the construction of said dwelling-houses under the contract aforesaid, and had the said contract in part performed, to wit, the brick work was up to the third story, ready for the roof on two of them, and the roof partly on the other two, but was prevented from proceeding further with the construction of said buildings by reason of the said wall falling down and over and on to said tenements, whereby the same were crushed, broken down and destroyed. And the said plaintiff avers that the falling of said wall was not caused by the fault or neglect of him the said plaintiff, but the same was caused by the defects in said wall by reason of its having been originally defectively constructed, and by the carelessness and negligence of the said defendant in not properly erecting and constructing said

[Sinnott *v.* Mullin.]

wall with proper materials, and in not properly maintaining, repair-
ing and supporting said wall; and that, by reason of the premises,
he is entitled to recover, have and receive of and from said defend-
ant the sum of $1953.35, being the amount paid, laid out and
expended by him for work, labor and materials, in the construction
of said buildings, up to the time they were so destroyed as afore-
said, to wit, at the county aforesaid.

"And the said plaintiff also complains of said defendant, and
avers that afterwards, to wit, in December 1872, to wit, at the
county aforesaid, the said defendant did receive and take, and
apply to his own use, the lumber, joists, brick and materials left
and there lying, after the destruction of the buildings aforesaid, as
mentioned in the preceding count in this declaration, amounting in
value to the sum of $1000; by reason whereof said defendant
became and is liable to plaintiff for the value of the same, to wit,
at the county aforesaid."

The plaintiff claimed to recover under the first count of this
supplemental *narr.* on one of two grounds: 1st, that there was an
implied covenant or agreement on the part of defendant that the
location was a good and safe place for the erection of the buildings;
or 2d, that the wall having fallen through a defect in its original
construction, the plaintiff was excused from completing his contract,
and the defendant became liable to pay for the work and materials.

The court below (White, A. J.) refused to allow the jury to pass
upon the question of negligence, and instructed them, "that the
only question for them was under the second count of the supple-
mental *narr.*," which action of the court constituted the fifth assign-
ment of error.

The plaintiff submitted the following four points, with which are
given the answers of the court, which answers constituted the first
four assignments of error.

1. That under the contract between the parties in evidence, the
defendant, Mullin, was bound to provide the plaintiff with a reason-
ably safe and secure place, on which to erect said houses, and said
contract is to be taken and construed as a covenant and undertaking
on the part of Mullin, the defendant, that said premises were safe
and secure from danger or injury from adjoining buildings, wall or
erections, around, by and upon the other parts of the premises of
said defendant.

Answer: "Under some circumstances this might be true, but I
do not think it is the law in this case. It is in evidence that the
plaintiff, before he entered into the contract, saw the premises and
examined them, and that neither he nor the defendant considered
the wall unsafe. It had stood there for over twenty years, appeared
all right and did not look unsafe or dangerous. The plaintiff had
as good opportunities of judging of the safety of the location as
the defendant, and being an experienced contractor, was, perhaps,

[Sinnott *v.* Mullin.]

better qualified to judge. With his eyes open, and with full knowledge of the situation he entered into the contract. Under the circumstances of this case, therefore, I do not think there was any such implied covenant or agreement on the part of defendant, and I refuse this point."

2. That if the jury are satisfied from the evidence that the wall mentioned fell by reason of insufficiency in the construction of said wall, and that the same was not contributed to in any way by the acts of said plaintiff or his employees, that then the loss and damages caused thereby must fall upon and be borne by Mullin, the owner of the premises, and not by Sinnott, the contractor.

Answer : " This point asks me to say, that in law the defendant would be liable for damage occasioned by the fall of the wall in consequence of any insufficiency in its original construction, without regard to the time when, or the purposes for which it was built, how long it had stood, or whether the defendant had any knowledge of any imperfection in it or insufficiency in its construction. It is also based on the idea, that the wall fell from some inherent defect or insufficiency in the wall. The evidence is not sufficient to sustain that position. It is manifest it fell from a heavy slide from the hill above the wall, caused by the heavy rains of the few days previous. In all probability the hill would have slid down if there had been no wall, or even if the wall had stood, the slide would have gone over it, and done the same damage. This point is therefore refused."

3. That if the jury are satisfied from the evidence that the wall fell by reason of the water running from the hill, falling and settling behind the wall, and that such flow and settling of the water could have been prevented and guarded against by reasonable care, skill and expense, and that the defendant neglected to so provide for the safety of said wall, that then any loss resulting from the falling of the same must be borne by the owner, the defendant."

Answer : " This point is also based on a supposition of facts not sustained by the testimony, and would make the defendant liable, whether he had any knowledge of the assumed facts or not. The wall had been erected by a prior owner, had stood for twenty or twenty-five years, looked well at the time, and neither the plaintiff nor defendant anticipated any danger from it. There is no evidence that the defendant knew or had good reason to believe, there was any defect or imperfection in the wall or any injury from water behind it, or any danger to be apprehended from it. This point is therefore refused."

4. That if the jury are satisfied from the evidence, that the wall mentioned, across the rear of the lot, at the base of the hill, was put there by the original owner of the property, and was kept there and maintained by the defendant, after he purchased, for the purpose of protecting the part of the lot below and between the wall

[Sinnott v. Mullin.]

and Second avenue, from injury, by reason of the earth, slate and stone from the side of said hill falling or sliding down upon the same, that then the responsibility and duty was upon the defendant, to know and see that said wall was reasonably sufficient for the purpose, and if the jury are satisfied from the evidence that said wall was not sufficient for the purpose intended, and fell down and injured the houses then being erected by the plaintiff for the defendant, that the loss occasioned thereby will fall on the defendant, and not on the plaintiff, unless the plaintiff, or his employees, were guilty of contributory negligence.

Answer: "This point, like the others, is based upon the jury finding certain facts of which there is no sufficient evidence. There is no evidence as to who built the wall, and no direct evidence for what purpose it was built. The evidence would indicate that it was built for a protection from loose earth and stones falling down, and not as a support to the hill. The hill was mainly rock and needed no support. The evidence, as already stated, would not justify the jury in finding that the wall fell from any inherent defect or any insufficiency for the purpose intended, but from a heavy slide of the hill above the wall. The wall had stood about twenty or twenty-five years. There is no evidence that the defendant did not know or believe that it was sufficient for the purpose for which it was intended and retained.

"If the defendant had knowledge that it was defective or insufficient or had good reason to apprehend any danger, he would doubtless have been bound to repair it and make it safe. His neglect to do so might be negligence on his part. It is only on the footing of negligence that the defendant could be held liable. And, considering the length of time the wall had stood and its apparent condition at the time of the accident, and the absence of all evidence that the defendant knew of any defect, or had any reason to apprehend danger, I cannot see what negligence he has been guilty of, or that the jury would be justified in finding a verdict against him on this point as it stands. It is therefore refused."

The sixth assignment was the refusal of the court to permit W. G. Smith, an engineer, to testify for what purpose, in his opinion, the wall was put across the back end of the lot, and why it should be thirty feet high if not to support the hill and keep it from coming down on the lot.

The seventh assignment was in not permitting the same witness to reply to the following question: "In building a wall there, a stone wall, such as has been described here, state what number of headers should be in it, a stone wall on the side of that hill for a retaining wall?"

The eighth assignment refusing to permit same witness to answer this question: "After an old wall has been thrown down, among

1 NORRIS—22

[Sinnott *v.* Mullin.]

the debris, could you distinguish the headers and stretchers from other stones there ?"

With the above proceedings, what is contained in the opinion of this court will make the case clear.

The verdict was for the defendant, and the plaintiff took this writ, the assignments of error being those heretofore noted.

*John Barton* and *C. F. McKenna*, for plaintiff in error.

*A. M. Brown* and *John J. Mitchell*, for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

This cause was tried on the issues tendered by the plaintiff in the two counts of his supplemental declaration. The first of these counts sets forth a sealed agreement executed on the 17th of April 1872, the terms of which provided for the erection by the plaintiff of four three-story dwelling-houses on a lot of ground belonging to the defendant in the Sixth ward of the city of Pittsburgh, in consideration of $3500, which it was stipulated the defendant was to pay. Part performance of the contract is then averred, and the failure to complete it is alleged to have been caused by the falling of a stone wall, twenty-four feet in height, on another part of the defendant's lot, whereby the houses which were in the course of construction, in the language of the count, " were crushed, broken down and destroyed." The falling of the wall is averred not to have been the result of any fault or neglect of the plaintiffs, " but the same was caused by defects in said wall by reason of its having been originally defectively constructed, and by the carelessness and negligence of the said defendant in not properly erecting and constructing said wall with proper materials, and in not properly maintaining, repairing and supporting the said wall." For the work and materials done and furnished in the erection of the buildings thus destroyed, the sum of $1963.35 is claimed by the plaintiff in this action. The second count alleges the appropriation by the defendant of lumber, joists, brick and material left upon the ground after the destruction of the buildings, of the value of $1000. No objection has been made here to the course of the trial under this last count. The evidence in support of the allegations it contained was submitted to the jury fully and satisfactorily. The methods by which the court below disposed of the questions raised by the evidence given and offered in support of the averments of the first count, are the only subjects of present consideration.

It is unnecessary to recite the points of the plaintiff's counsel, and the answers of the court in their terms and details. The general grounds on which the claim was pressed were : 1. That it was the duty of the defendant to provide a place for the erection of the

[Sinnott *v.* Mullin.]

houses under the contract that was reasonably secure and safe, and that the contract itself implied an undertaking on his part that the place chosen was free from danger. 2. That he was responsible for the fall of the wall on the rear of the lot, if the fall was caused by insufficiency in its construction. 3. That the loss resulting from the accident should be borne by him as the owner of the property if the wall fell by reason of the flow and settling against it of water from the hill behind it, which could have been prevented by reasonable care, skill and expense; and 4. That if the jury should find that the wall had been built by the original owner to protect the part of the lots between itself and Second avenue from the fall of earth, slate and stone, from the side of the hill, it was his duty to know and see that it was reasonably sufficient for the purpose, and if found to be insufficient, he and not the plaintiff should bear the loss.

All the points were refused, mainly, it would seem, upon the ground that the evidence was not such as to warrant the submission of any question to the jury. Admitting that under some circumstances it might be true that the defendant would be bound to provide a place reasonably secure and safe for the erection of the buildings, the court held it not to be the law of this case. " It is in evidence," the judge said, "that the plaintiff, before he entered into the contract, saw the premises, and examined them, and that neither he nor the defendant considered the wall unsafe. It had stood there for over twenty years, appearing all right, and did not look unsafe or dangerous. The plaintiff had as good opportunities of judging of the safety of the location as the defendant, and being an experienced contractor, was perhaps better qualified to judge, and with his eyes open, and with full knowledge of the situation, he entered into the contract." In answer to the request to charge that the defendant was responsible for the consequences of the fall of the wall if it was insufficiently constructed, the court said that the point was based on the idea that the wall fell from some inherent defect or insufficiency in itself; that the evidence was not sufficient to sustain that position; that it was manifest that it fell from a heavy slide of the hill above it caused by the heavy rains of the few days previous; and that in all probability the hill would have slid down if there had been no wall, or even if the wall had stood, the slide would have gone over it and done the same damage. The court refused to charge that the loss resulting from the accident should be borne by the defendant if it was caused by the settling of water behind the wall, which could have been guarded against by reasonable care, skill and expense. The point was answered in these words: " This is also based on the supposition of facts not sustained by the testimony, and would make the defendant liable whether he had any knowledge of the assumed facts or not. The wall had been erected by a prior owner, and had stood

[Sinnott *v*. Mullin.]

for twenty or twenty-five years, looked well at the time, and neither the plaintiff nor defendant anticipated any danger from it. There is no evidence that the defendant knew or had good reason to believe that there was any defect or imperfection in the wall or injury from water behind it, or any danger to be apprehended from it." In answering the last point, the general facts that have been quoted were repeated, and the court added: " there is no evidence that the defendant did not know or believe that the wall was sufficient for the purpose for which it was intended. If the defendant had knowledge that it was defective or insufficient, or had good reason to apprehend any danger, he would have been bound to repair it and make it safe. It is only on the footing of negligence that the defendant could be held liable, and considering the length of time the wall had stood, and its apparent condition at the time of the accident, and the absence of all evidence that the defendant knew of any defect, or had any reason to apprehend danger, I cannot see what negligence he has been guilty of, or that the jury would be justified in finding a verdict against him on this point as it stood."

The first point should have been affirmed subject to the qualification that the plaintiff was barred of all right to a verdict if he had taken upon himself the risk of danger from the condition of the defendant's property. The wall was on the ground on which the houses were to be built, but on a part of it over which he had no rights. The case stands as if the injury had resulted from the fall of a structure on adjoining property belonging to the defendant. The relations of the parties were created by the contract, and for the purposes of this question, they do not essentially differ from the relations towards each other which exist between master and servant in the ordinary contract for the employment of labor. The plaintiff had the right to require that the place where his work was to be done should, in the language of the point, "be reasonably safe and secure," and such a place it was the duty of the defendant to afford. Against manifest and patent danger, the plaintiff would be held to take his chance. It was for the jury to say whether the danger was manifest and patent here. Was this wall reasonably safe and secure ? If not, were the defects in its construction latent? And were they such defects as the defendant was bound to know ? " Without entering on the perilous regions of implied warranty, it is sufficient for the purpose of justice to assert, that it is the duty of the employer to advise the employee of all defects which the employee ought to know, and that the employer, if he fail in performing his duty, is liable to the employee for injury the latter may thereby receive :" Whart. on Negligence, § 209. Further than this, the employer is not only liable for injury sustained from extraneous latent dangers if he withholds from the employee notice of them (Baxter *v*. Roberts 44 Cal. 187), but he is liable also for injury caused by defects of which the employer may not have been cogni-

sant, but which it was his duty to have searched for and remedied.: Whart. on Neg., § 211. Where a servant is employed on machinery, from the use of which danger may arise, it is the duty of the master to take due care and to use all reasonable means to guard against and prevent any defects from which increased and unnecessary danger may occur. The risks necessarily involved in the service must not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract or the nature of the employment, the servant had the right to expect it would be kept: Cockburn, C. J., in Clark v. Holmes, 7 Hurlst. & N. 937. There was evidence that the attention of the plaintiff was called to the condition of the wall while negotiations for the contract were going no. But whether he satisfied himself as to its safety, and assumed any risk which his work in its neighborhood might involve, or relied on the assurances of the defendant, and concluded his contract in ignorance of latent dangers, it was the province of the jury to decide.

In answering the three other points, the court assumed that there was no evidence to support a verdict for the plaintiff. Several witnesses testified to facts tending to prove the insufficiency of the wall. The plaintiff himself swore that, although it appeared all right upon its face, yet after it fell, it could be seen that it had been built with small stones, and had little or no mortar. Martin Corcoran said: "My opinion was certainly that it was not capable of holding up that bank. The wall was not thick enough in the first place, and the stone not heavy enough for a wall of that size." John McMahon swore that "there had been long stretchers in it of stone, and no binders to keep the wall at all. The balance of the stone in the back of it were all small stone mixed with shaly stuff and mortar or cement. I found the foundation to be about six inches in the ground; had to use crowbars to take the stone out. It was solid; it had not been disturbed at all—the foundation. It had broken about three or four feet above the foundation." In their answers to the third and fourth points, the court said there was no evidence of any knowledge on the part of the defendant that the wall was defective, or that any reason existed why danger from it should be apprehended. But facts were testified to which it would have been the duty of the jury to consider in deciding the question of the defendant's knowledge, if that question had become material. McMahon said: "It appeared there was a leakage come through the wall; all through from the back of the wall. There were eighteen inches, about, of material between that wall and the solid hill, and it caused the drainage to come down through the wall." Upon the same subject John Rice testified: "It looked old, like as if the water had settled behind the wall and run through it; streams kept coming down about the middle." The eventual effect of a stream of water through the middle of such a structure as this could not be doubt-

[Sinnott *v.* Mullin.]

ful, and the statements of the witnesses that the passage of the water was constantly visible in wet weather, were certainly some evidence from which the defendant's knowledge of the defects and insecurity of the wall could have been implied.

The defendant was responsible for the neglect of ordinary care in the management of the property on which he invited the plaintiff to enter; and this is all, except, perhaps, in the second point, that the court were asked to charge. In the first point, "a reasonably safe and secure place" for the erection of the houses was insisted on. In the third point, "reasonable care, skill and expense," in guarding against danger, were stated as the measure of the defendant's duty. The fourth point asked that the jury should be told that "the responsibility and duty were upon the defendant to know and see that the wall was reasonably sufficient for the purpose for which it had been built and maintained." The defendant would not be responsible for the consequences from accident produced by causes which ordinary sagacity could not foresee, and ordinary prudence could not control. No claim for absolute protection was asserted on behalf of the plaintiff. To the extent to which they defined the defendant's duty, the first, third and fourth points should have been affirmed. The second point was too broadly stated. The fact that the wall was found, after its destruction, to have been defective, if no reasonable means of knowledge were in the defendant's reach, would not subject him to liability. He was bound to exercise ordinary care. It was for the jury to say, if the wall was insufficient, whether the defect was one against which it would have been the duty of a man of ordinary caution to provide.

The offers specified in the seventh and eighth assignments of error were to show facts similar in kind to much of the testimony which the court received. The proposition was to exhibit the character of the wall, and the particulars in respect of which it was defective. The offers tended to support this proposition, and should have been received. The sixth assignment is unfounded. Mr. Smith was an engineer, and his opinion as an expert would have been admissible in a proper case. But it was not competent for him to swear to his belief as to the original purpose in view. in building a wall which had been standing between twenty and thirty years.

In the course of the trial objection was made to the form of the action. The plaintiff sued in assumpsit. The original agreement between the parties was under seal. The theory of the plaintiff is founded on the principle that where a contract creates a duty, the neglect to perform that duty as well as the negligent performance of it, is a ground of action for tort, and it is at the election of the party injured to sue either on the contract or the tort: Addison on Torts 913; Ferguson *v.* Earl of Kinnoul, 9 Cl. & Fin. 289. And it is contended that the fact that the action on the contract

[Sinnott *v.* Mullin.]

would be covenant is immaterial. In some cases where the breach of a covenant is a misfeasance, the party has an election to proceed by action of covenant or by action on the case for the tort : 1 Chit. Plead. 109. The right to an action on the case being assumed, the further right is asserted to waive the tort and bring assumpsit, and Pearsoll *v.* Chapin, 8 Wright 9, is relied on to support this claim. This seems a circuitous process to the result the plaintiff seeks to reach, but the question is not legitimately in this record. The court below sustained the declaration. Whether the suit can be supported as it stands, or the form of action ought to be changed, must be remitted for decision to the Common Pleas.

Judgment reversed, and a *venire facias de novo* awarded.