## Huzzard *versus* Nagle.

## Manderbach *versus* Nagle.

*Bond of Indemnity.—Evidence in Action on.—Liability of Surety.*

1. Parties, plaintiffs in certain executions, indemnified a sheriff for levying upon and selling goods, alleged to belong to the defendant, which were claimed by others, who, after the sale, sued the sheriff in trespass; the plaintiffs defended the suit, but unable to succeed, fixed the amount of the recovery by compromise, part of which was paid and the balance collected from the sheriff, who then brought suit to recover the amount paid by him, against each of the sureties on the indemnity-bond, which was joint and several. *Held*, that as the contract of suretyship was to save the sheriff harmless, the bond was broken when judgment was recovered against him, and that he was entitled to recover, as damages, the amount paid by him, through the failure of the sureties to comply with the conditions of their bond.

2. The record of the suit against the sheriff was admissible in his favour in the action against the surety, even though the surety was not a party and had no notice of the suit; for it was proper evidence that the loss and damage had happened, which he had contracted that his principals should not allow to happen.

3. The record of the suit and judgment therein, was not conclusive evidence of the amount of damages the sheriff was entitled to recover against the sureties, as the amount might have been increased by the fault of the sheriff, for which the bond was not intended to secure him.

ERROR to the Common Pleas of *Berks county.*

These were actions of debt brought in the court below to April Term 1858, by James Nagle against Rudolph Huzzard, and by same plaintiff against John Manderbach, on a bond of indemnity, made and delivered under the following circumstances :—

John Potteiger and James Rice, partners, obtained a judgment in Berks county, against William Kramer, for $492.41, and sued out thereon a *testatum* execution, directed to James Nagle, who was then sheriff of Schuylkill county. The writ came to hand April 26th 1854, and under it Nagle levied on certain cattle which were claimed by Henry and William Kramer, the sons of the defendant. Nagle then called upon the plaintiffs to indemnify him, whereupon they, with John Manderbach and Rudolph Huzzard, of Berks, and George W. Mortimer, of Schuylkill county, executed and delivered to him a joint and several bond in the sum of $1000, conditioned to indemnify him against all suits, actions, costs, charges, and damages, by reason of selling the goods and chattels of any persons whatsoever, as, or supposing them to be the goods and chattels of the defendant in the writs. There was another execution placed in the hands of Sheriff Nagle, against the same defendant, by William Zerr, who also executed and delivered a bond with like conditions.

On the 5th of September 1854, Sheriff Nagle sold the pro-

[Huzzard *v.* Nagle.]

perty levied on, for $1054, which satisfied the executions of Potteiger & Rice, and of Zerr, leaving in his hands a balance of $135.61.

Henry and William Kramer then brought an action of trespass against Nagle for selling their cattle, and entered a rule to arbitrate.

Potteiger and Zerr employed counsel to defend the sheriff, and attended several meetings of the arbitrators with their witnesses, as also twice while the case was in court.

Before the case was tried, Potteiger and Zerr settled with Henry and William Kramer, by agreeing to pay $427.84, besides the balance in the hands of the sheriff, stipulating that the defendant Nagle should have a stay of execution for sixty days. Zerr paid part of this judgment, and the balance was collected from Nagle by execution, who then brought these suits as above stated. To declarations in the usual form, the defendant in each of the suits pleaded *nil debet*, payment with leave, &c.

On the trial, after giving in evidence the judgments of Potteiger & Rice and of William Zerr against William Kramer, the *testatum* execution, with return of levy and sale as above stated, and the payment of the proceeds of sale to the plaintiff, and to the defendant in the writs, the plaintiff in this action offered in evidence the record and all the proceedings of the suit in Schuylkill county, by Henry and William Kramer against him, which was objected to by the defendant—but the court (JONES, P. J.) admitted the evidence, noting an exception for defendant; and the testimony being closed, instructed the jury that the plaintiff was, under the evidence, entitled to their verdict. There was a judgment and verdict accordingly; whereupon the defendant sued out this writ, and assigned for error here the admission of the record of the suit in the Common Pleas of Schuylkill county, by Henry and William Kramer against James Nagle, and the instruction of the court below, that the plaintiff, under the evidence, was entitled to their verdict.

*John Banks*, for plaintiff in error.—1. The plaintiff in error was not a party to the suit, and had no notice of it—had no opportunity to take part in it, and, therefore, did not take part in it. These are admitted facts. Rudolph Huzzard is not, therefore, bound by the judgment: 1 Greenl. Ev., § 522.

The sureties of a sheriff are liable in damages, for the sheriff's trespass in seizing and selling the goods of B., under an execution against A., but a judgment in trover against the sheriff alone for the same cause, is not binding upon the question of damages, in a suit against the sheriff and sureties: Camack *v.* Commonwealth, 5 Binn. 184. See the opinion of C. J. Tilghman, page 188, also of Justice Yeates in the same case, page 191.

[Huzzard *v.* Nagle.]

2. In the record offered in evidence, it appears that the case was settled, and that damages claimed by the plaintiff, against William Zerr, were included. Huzzard was not connected with William Zerr. He had no privity with him. He was not answerable in any way for damages on his account. This then was a case between other parties, to whom Huzzard was alien, and the record was not evidence; nor was the subject-matter of the suit the same. Huzzard had no right or opportunity to make defence, or control the proceedings, or adduce testimony, or cross-examine witnesses adduced on the other side. Not having these rights, or an opportunity to exercise these, he was a 'stranger to the case : 1 Greenl. Ev., § 523.

3. The principles upon which judgments are held to be admissible and conclusive, require that the suit should apply only to that which was *directly in issue*, and it is only when the point in issue has been determined that the judgment is a bar, for if there has been *no judgment of the court upon the matter in issue*, the proceedings are not conclusive: 1 Greenl. Ev., § 529. To constitute the former judgment a complete bar, it must appear to have been a decision upon the merits : 1 Greenl. Ev., § 530.

In this case the record shows that the point at issue was not determined. There was *no judgment of the court upon the matter at issue*. It was settled by parties other than the plaintiffs in error, who had no power to bind him as to the right of the plaintiff to the property, or as to the amount of damages. It also appears, that in the settlement they went beyond any issue in which Huzzard could have been involved.

4. Time was given for the payment of the money without the consent of Huzzard by judgment, therefore it was binding. This released Huzzard from all liability as bail : Clippinger *v.* Creps, 2 Watts 45.

5. Nagle held Huzzard's bond of indemnity, in relation to the execution of Potteiger and Rice. When sued he should have given them notice. He should have made an honest and full defence—the confession of judgment by him would not have been evidence in his favour. It would be evidence made by himself. A settlement made by him would not be evidence for him for the same reason. If he permitted others to settle, it would fall within the same principle. Huzzard was not represented by any one. If Nagle intended to look to Huzzard, he should have given him notice. He knew of the suit, Huzzard did not. He lived in the county, and Huzzard did not. It was, therefore, his duty to defend the suit in good faith, or have given him notice, so that he might have made defence. It will not do for him to say, that Potteiger and Rice had notice, and that they made the settlement. It might answer as to Potteiger and Rice, but as to no other. Let him look to them, and not to Huzzard.

[Huzzard *v.* Nagle.]

They treated him as if he had no right in controversy. He ought, therefore, to have no responsibility.

*John S. Richards* and *Hiester Clymer*, for defendant in error.—The bond on which suit is brought was given, and the condition broken; there is, therefore, no doubt, that plaintiff was entitled to recover without proof of payment, or of an action brought against him by the persons against whom he was indemnified: Kimmel *v.* Stroh, 8 Watts 157.

The object of the trial was to ascertain plaintiff's damages. The penalty was $1000. We did not claim that. After a vigorous defence the counsel made the best settlement they could make, and compromised for $427.84.

That Huzzard was not a party to the suit, and had no notice of it, is immaterial. Notice to two of three joint promissors of the commencement of a suit against which they had indemnified the plaintiff, is notice to all: Carman *v.* Noble, 9 Barr 356; Bartlett *v.* Campbell, 1 Wend. 50.

The fact that the damages against Zerr were included in the settlement did not injure Huzzard—because,

1. The compromise was for less than the judgment for which he had indemnified plaintiff; and,

2. Zerr's liability was for less than half the sum for which the suit was compromised, while he paid more than half.

An officer holding the bonds of indemnity for the same property on different executions may resort to both, or either: Findley *v.* Hutzell, 5 Casey 337.

If Nagle had sued Potteiger and given him time, the principle cited for plaintiff in error would apply, but it has no relation to this case. Nagle did not give time, but through the intervention of Potteiger had time given to him. Nagle did not confess judgment. The settlement was agreed upon by Potteiger and his counsel, after mature deliberation, in which settlement Huzzard *was* represented by his joint obligor Potteiger, their interests being identical.

The opinion of the court was delivered, July 25th 1861, by

LOWRIE, C. J.—This contract of suretyship is, that Potteiger and Rice will save the sheriff harmless, in case he should levy on certain goods alleged to belong to the defendant in the execution, but claimed by another. Did they do so? If not, what damage did the sheriff suffer by the default? These are the true questions of the case. The answers are, that they appeared and made the best defence they could in the suit against the sheriff, and failed, and by compromise fixed the amount of the recovery. Then they did not save him harmless, but allowed him to be sufferer to the amount of that judgment; and therefore the bond

[Huzzard *v.* Nagle.]

of the surety is broken, and a certain amount of loss sustained; and this is just what the surety engaged should not take place, or that he would pay for it if it did. The record of the suit against the sheriff was proper evidence to show that the very thing had happened which the surety contracted that his principals should not allow to happen. Of course it was not conclusive of the amount, for the surety might have shown that the amount was increased by reason of some fault of the sheriff, for which the bond was not intended to secure him.

Judgment affirmed.

## MANDERBACH *v.* NAGLE.

For same reasons,                                    Judgment affirmed.